IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, KANSAS, ALEJANDRO RANGEL-LOPEZ, <br><br> Plaintiffs, <br><br> vs. <br><br> DEBORAH COX, FORD COUNTY CLERK, in her official capacity, <br><br> Defendant. | Civil Action No.: |

## COMPLAINT

Plaintiffs the League of United Latin American Citizens Kansas and Alejandro Rangel-Lopez by and through their attorneys, brings this action against Defendant Deborah Cox in her official capacity as the County Clerk of Ford County, Kansas and alleges as follows:

## PRELIMINARY STATEMENT

1. Last month, Ford County Clerk Deborah Cox unilaterally decided to move the city's sole voting location to the Western Bank Expo Center, located a mile *outside* of the city. The Expo Center is, in Defendant's own words, "not a convenient location." The site is not accessible by public transportation, is on average two times further away from Dodge City's largest employers than the Civic Center, and requires voters to cross railway tracks that are often blocked by passing trains for 15-20 minutes during common voting times. Limiting Dodge City to a single inaccessible polling location outside of town imposes a substantial burden on all voters. However, restricting voting to the Expo Center will particularly and

1

disproportionately impact Hispanic voters, who are less likely to have access to transportation and lack flexible work schedules. Despite acknowledging that moving the polling site would create a significant burden, Defendant has not proffered a reasonable justification for moving the polling location, much less a justification that would withstand constitutional scrutiny. Accordingly, Plaintiffs file this action and urgently request that a temporary restraining order be issued as soon as possible.

## JURISDICTION AND VENUE

2. This is a civil and constitutional rights action arising under 42 U.S.C. §§1983 and 1988, and the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§1331, 1343(a)(3), 1357, and this court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2202.

3. Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims occurred in the District of Kansas. The Defendant Ford County Clerk Debbie Cox is also located within this District.

## PARTIES

4. Plaintiff, the League of United Latin American Citizens of Kansas ("LULAC Kansas"), is a Latino civil rights organization with members and chapters located in cities and universities throughout of the State of Kansas, including Dodge City. LULAC Kansas brings this action in its own right and on behalf of its members in Ford County, Kansas. One of LULAC Kansas's primary missions is to empower Latinos through voting and increase voter participation throughout the state. LULAC has regularly engaged in voter education and registration efforts within the Hispanic community in Ford County. In mid-October 2018, after LULAC Kansas

2

officers learned that Defendant Cox had moved the polling location to the Expo Center, they organized an advance mail ballot application drive with the United Food and Commercial Workers, Local 2 union. LULAC Kansas also publicized the polling location change on its Facebook and Twitter pages. Because LULAC Kansas conducted the advance ballot application drive, it had to alter other plans it scheduled for the month of October. Specifically, LULAC Kansas spent less time doing voter registration and candidate education work because it felt compelled to help Dodge City voters sign up for advance mail ballots.

LULAC Kansas also has members in Dodge City that will be directly impacted by the polling location change. The majority of officers and rank and file members of Dodge City LULAC Council #11083, are registered voters in Ford County who are assigned to the Expo Center polling location for the November 6th election. LULAC members in Dodge City will have to contend with traffic, distance, and long lines in order to vote in-person on November 6, 2018. LULAC Kansas brings this lawsuit and accompanying motion for a Temporary Restraining Order to avoid continued diversion of resources to voter protection efforts away from voter education and "Get Out the Vote" initiatives the organization has planned. LULAC also seeks a TRO on behalf of its members to ensure they are not unduly burdened when they exercise their right to vote on November 6, 2018.

5. Plaintiff Alejandro ("Alex") Rangel-Lopez is a senior at Dodge City High School and plans to vote in his first election on November 6, 2018. As with all other voters in Dodge City, Rangel-Lopez has been assigned to vote at the Expo Center located outside of the city. Because of his class schedule, Rangel-Lopez cannot vote before school. He has to vote when classes are released around 3:00 P.M. Rangel-Lopez typically works after school job at a local law firm to earn money to pay for gas and his braces. Because the polling location is now

outside of town and further from Dodge City High School than the Civic Center, Rangel-Lopez is worried he would be late for work if he voted after school. Therefore, Rangel-Lopez requested the afternoon off from the law firm. Rangel-Lopez hopes to volunteer to help drive people to the polls after he votes. However, he is worried that he will not have much time to volunteer given how long it will take to travel to and from the Expo Center and the long lines that form in the city's single polling location. Rangel-Lopez believes an additional polling location in town would make it easier for him and other Dodge City High School students to attend all of their classes, participate in after school activities, and vote.

## FACTUAL ALLEGATIONS

### Burdens on the Right to Vote

6. The Civic Center has been the only polling location in Dodge City since 1998. The location was used most recently on August 7, 2018 for the primary elections. Defendant Cox learned that the city planned construction in the vicinity of the Civic Center sometime in the early fall of 2018. Without consulting city administrators about the possible impact of the planned construction, Cox unilaterally determined that the polling location must be moved to the Expo Center. Cox also did not inquire into other possible ADA compliant buildings within the city that could serve as a temporary polling location.

7. The Expo Center is located at the intersection of US Route 400 and US Route 283. The location is on average twice as far away from Dodge City's largest employers than the Civic Center. The Civic Center is also closer to the home of virtually every voter in Dodge City vis-à-vis the Expo Center. In addition to the sheer increased distance voters must travel in order to cast a ballot at the Expo Center, they are likely to encounter significant traffic. Railways bisect the roads between the city and the Expo Center, causing heavy traffic during the lunch hour and

4

in the late afternoon when freight trains stop in the city. The trains block off the key intersections at Wyatt Earp Boulevard and 14th Avenue and at Central Avenue and Highway 50, preventing the flow of traffic across town for 15-20 minutes at a time.

8. Ford County is a majority-minority county, largely based on the demographics of Dodge City. Hispanic residents make up approximately 53% of the county's population, nearly five times the percentage of Hispanic residents in Kansas. The poverty rate in Ford County is 17.4% compared to 11.9% of people living in poverty in Kansas. Ford County residents are also overrepresented in low wage service and manufacturing industries where they have inflexible and unpredictable schedules. Hispanic residents are twice as likely to be poor in Ford County compared to their white neighbors.

9. While Ford County residents own vehicles at rates similar to Kansans at large, a significant number of people in Dodge City are public transit dependent because of income, age, and disability. In 2016, Dodge City Public Transportation estimated that approximately 36% of the county, or 12,556 residents, had a potential need for public transportation. Dodge City noted that approximately 223 disabled or elderly passengers relied on the city's public transportation system each month.

10. Ford County residents without disabilities also have a significant need for transportation assistance. Over 40% of households in Ford County do not own a car or share a single vehicle among multiple family members. Many Ford County residents rely on carpooling and other alternative forms of transportation to travel to work. Ford County workers carpool at double the rate of the state at large and rely on public transportation at a 10% higher rate than the rest of Kansas. Moreover, Hispanic workers in Ford County rely on group or public transportation solutions more often than white workers.

11. Thus, voters who do not have a vehicle or lack access to their vehicle when they are at work will face difficulty reaching the new polling location at the Expo Center. Voters were able to use public transportation to travel to the Civic Center after work, as all three city bus routes make stops within a couple of blocks of the site. However, the Expo Center is 1.3 miles from the nearest bus stop at 202 E McArtor Street. There is no sidewalk for the majority of the distance between the McArtor Street stop and Expo Center. Additionally, the total travel time from a centrally located part of Dodge City to the Expo Center would take approximately ninety minutes each way for a voter using public transportation. For example, a worker employed at Western Plains Hospital would be unable to travel to and from the polling location during his two hours of voting leave if he used public transportation.

12. Cox has increased the already significant challenges voters will face by providing inadequate and incorrect information about the polling location change. Under Kansas law, Cox is required to mail notice of a polling location change thirty days before the election. *See* K.S.A. 25-2701(d)(1). Cox purportedly mailed the notices on September 28, 2018, a large portion of which were returned as undeliverable. Further, Cox's only other effort to publicize the polling location change has been posting notices on the clerk website, in *La Estrella*, and in *Dodge City Globe*. Voters who get their news through radio or Facebook have no way of knowing about the polling location change.

13. Cox's office is also still instructing some voters that their polling location is the Civic Center. Voters who registered in the last several weeks have received registration cards telling them to vote at the Civic Center on November 6, 2018. The County Administrator, J.D. Gilbert, has since sent a letter seeking to clarify that while the Civic Center is the voter's *regular* polling place the person should vote at the Expo Center on November 6th.

Cox's Justification for Limiting in Person Voting to One, Inaccessible Polling Location

14. Cox moved the polling location from the Civic Center to the Expo Center because USD 443 notified her that there would be construction taking place near the building in October. According to officials from USD 443, the District did not tell Cox that the Civic Center building would be unavailable for voting.[1] Cox independently determined that the construction would potentially pose a risk to "voter safety" and decided to close the polling site in favor of the Expo Center.  Further, there is no indication that the Civic Center will be unsafe or inaccessible due to the construction on Election Day since the District is hosting several high capacity events in the days before and after Election Day.

15. Cox also determined that all voting should take place at a single polling site. According to Cox, Ford County decided to close seven of Dodge City's eight polling locations in the late 1990's to avoid ADA violations. At the time, the Civic Center was the only polling location in Dodge City that was ADA compliant.  Over the last two decades, virtually every government building in Dodge City, including all of the USD 443 schools, has come into compliance with the ADA.  However, Cox has declined to reopen former sites.  Indeed, Cox has insisted on maintaining a single polling location in Dodge City despite receiving citizen complaints that a single polling site has led to long lines and inefficiencies.

16. Cox has stated that has determined that all voting should take place at a single polling site because "it's hard to get poll workers."[2]  Having only one polling place does not obviate the need for a sufficient number of poll workers. Whether there are multiple polling locations or there is

---

[1] Mary Clarkin, *Dodge City, USD 443 say voting site wasn't their decision*, THE HUTCHINSON NEWS (Oct. 24, 2018), http://www.hutchnews.com/news/20181024/dodge-city-usd-443-say-voting-site-wasnt-their-decision (last visited Oct. 26, 2018).
[2] Michelle Ross, *Dodge City's one and only polling location is moving*, KSNW (Oct. 16, 2018), https://www.ksn.com/news/elections/dodge-city-s-one-and-only-polling-location-is-moving/1529330465 (last visited Oct. 26, 2018).

only one, the same number of voters will have to vote in Dodge City. But maintaining one majorly understaffed polling location for all residents is certainly no better than having several slightly understaffed polling locations that serve fewer voters. Yet, Cox has insisted on maintaining a single polling location in Dodge City despite receiving citizen complaints that a single polling site has led to long lines and inefficiencies. USD 443 Superintendent Dr. Fred Dierksen has unequivocally stated in the media that he would be willing to work with Defendant Cox to use neighborhood schools around Dodge City to serve as polling locations.[3]

17. Cox has rebuffed appeals to add additional polling sites and ignored complaints about the inaccessibility of the new polling location at the Expo Center. As a result, Plaintiffs have filed this lawsuit and motion.

<u>The Instant Lawsuit</u>

18. Plaintiffs League of United Latino American Citizens (LULAC) of Kansas and Alejandro Rangel-Lopez will both be significantly burdened by the polling location change. As a Latino civil rights organization with a strong presence in Dodge City, LULAC Kansas has undertaken significant efforts in recent years to increase voter participation in Ford County. Cox's decision to move Dodge City's only polling location to an inaccessible site outside of town will make in-person voting more difficult and will undermine LULAC Kansas's efforts to increase Latino turnout. LULAC Kansas has worked to offset the suppressive impact they fear will result from moving the city's only polling location to the Expo Center will have on Hispanic voters by helping them apply for advance mail ballots. LULAC has had to shift focus away from other election related efforts in order to respond to the moved polling location.

19. Plaintiff Rangel-Lopez is an eighteen year old Dodge City resident who will vote in his

---

[3] *See supra* note 1.

first election on November 6th. He plans to vote in person on Election Day. He is concerned that the distance to the Expo Center and long lines may interfere with his right to vote. Rangel-Lopez is planning to miss his afterschool job so that he will be able to vote without worrying about getting back to his job on time.

20. Plaintiffs claim that Cox violated their constitutional and civil rights by placing Dodge City's only polling location outside of the city. Count One claims that the Expo Center polling location violates the right to vote found in the Firsts and Fourteenth Amendments by imposing burdens on voting that are not justified by the government's proffered interest in protecting "voter safety." Count Two claims that Ford County's limited polling locations will have a discriminatory impact on Hispanic American voters in violation of Section 2 of the Voting Rights Act. Counts Three and Four are brought in the alternative. If Cox restricted voting in Dodge City to a single polling location because of concerns about ADA compliance, then the proper remedy is to bring additional polling places into compliance with the ADA on a reasonable timeline, not limit polling locations.

21. Defendant Deborah Cox is the county clerk of Ford County. Cox is the chief election official in Ford County and has authority under K.S.A. 25-2701 to determine the number and location of polling sites in the county. Defendant Cox is responsible for the decision to have only one polling location to serve the 13,136 voters in Dodge City. She also made the decision to move Dodge City's only polling location to the Expo Center on the outskirts of town.

## CAUSES OF ACTION
### COUNT ONE
*Violation of the First and Fourteenth Amendments*

22. Plaintiffs reallege and incorporate all preceding Paragraphs.

23. The First and Fourteenth Amendments protect the fundamental right to vote. *See Anderson v. Celebreeze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Pursuant to the *Anderson-Burdick* line of cases, the government cannot infringe on the right to vote without adequate justification, and the greater the character and magnitude of the infringement, the stronger the justification must be.

24. Defendant's decision to restrict in person, Election Day voting to a single polling location on the outskirts of town imposes a broad and significant burden on Dodge City voters. While wealthier voters with access to vehicles can drive to the Expo Center, they still must on average travel twice the distance to vote than if they were voting at the Civic Center or another centrally located polling site. The additional travel distance coupled with the wait time caused by an overburdened polling site, will make voting substantially more burdensome for all Dodge City voters.

25. The Expo Center polling location also imposes a uniquely severe burden for low-income, disabled, elderly, and Hispanic voters who are more likely to reach a polling location. Hispanic voters are overrepresented amongst Doge City residents who are burdened by the by the single, inaccessible polling location. For voters who rely on public transportation, the new polling location increases the time they must spend travelling to and from voting site by at least three hours.

26. In light of these burdens, the government's interests in restricting access to polling locations must be especially weighty and substantial. Here, they are not. Defendant Cox's main justification for moving the polling location to the Expo Center was her concern that construction near the Civic Center would create safety risks for voters. Defendant Cox also claims that the Expo Center was purportedly the only non-dangerous, ADA-compliant

building large enough to accommodate voting on Election Day. Neither of these proffered interests are accurate and even if they were, they would not justify closing the polling location. First, the construction near the Civic Center is not remotely dangerous to voters, nor was it projected to be by the city government. The Civic Center is hosting a number of events open to the public the same week as Election Day. Additionally, the ADA compliance justification is baseless as there a dozens of ADA compliant building that Defendant could have offered.

27. With respect to alleged cost savings, governments routinely justify the infringement of constitutional rights on cost savings, and those arguments routinely fail. In this case, the County's economic interests cannot override the fundamental interest in the right to vote.

28. For these reasons, Defendant's decision to limit voting to a single in person polling location violates the First and Fourteenth Amendments to the United States Constitution.

## COUNT TWO
*Violation of Section 2 of the Voting Rights Act Due to Discriminatory Impact*

29. Plaintiffs reallege and incorporate by reference all preceding Paragraphs.

30. Section 2 of the Voting Rights Act of 1965 provides that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a).

31. As a result of Defendant's action, Hispanic voters in Ford County will be disproportionately harmed by having to travel further in order to vote at the Expo Center as compared to their white counterparts.

32. Hispanic voters will suffer disproportionate harm as they: (a) are less likely to have access to a vehicle; (b) have lower incomes, and (c) work industries with less flexible schedules; and

thus face a greater burden accessing the polling location. The disparate impact interacts with a history of racial discrimination and disparate socioeconomic factors such that Defendant Cox's action makes it disproportionately harder for Hispanic voters to participate in the political process.

33. As previously noted, the purported bases for Defendant's actions—i.e. voter safety, compliance with the ADA, and trouble recruiting poll workers—are baseless. Compliance with the ADA means making non-compliant facilities legal or finding alternative ADA-compliant voting sites. It does not mean shutting them down.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the following:

(a) That this Court issue a judgment declaring that Defendant's decision to move the only polling place in Dodge City to an inaccessible location on the outskirts town is illegal and unconstitutional;

(b) That this court issue a temporary restraining order enjoining Defendant to open an additional polling location in Dodge City for the November 6, 2018 election;

(c) That this Court issue a permanent injunction requiring Defendant to open polling locations that are accessible by public transportation and can be easily accessed by voters;

(d) The Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988;

(e) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

## Designation Place of Trial

Pursuant to D. Kan. 40.2, Plaintiff designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

This 26th of October, 2018

                                                          /s/ Lauren Bonds

Lauren Bonds, KS Sup. Ct. No. 27807
Zal Kotval Shroff KS Sup. Ct. No. 28013
ACLU FOUNDATION OF KANSAS
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
lbonds@aclukansas.org
zshroff@aclukansas.org

ATTORNEYS FOR THE PLAINTIFFS

CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. On that date, I also served a copy of the Complaint, Plaintiffs' Motion for a Temporary Restraining Order, and accompanying Memorandum of Law on the Ford County Clerk's Office.  Copies will also be e-mailed to the law firm who may represent Defendant in this instant matter.

Date: October 26, 2018

/s/ Zal Shroff_____