IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, KANSAS, ALEJANDRO RANGEL-LOPEZ,<br><br>    Plaintiffs,<br><br>vs.<br><br>DEBORAH COX, FORD COUNTY CLERK, in her official capacity,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.: 2:18-cv-02572-DDC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY IN SUPPORT FOR MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiffs' League of United Latin American Citizens, Kansas and Alejandro Rangel-Lopez submit this short reply in support of their Motion for a Temporary Restraining Order, ECF No. 4. Defendant Cox's response brief mischaracterizes Plaintiffs' arguments and misstates facts in several critical respects that should be clarified for the court prior to Thursday's hearing.

**A. Plaintiffs Are Not Requesting Emergency Injunctive Relief Under Section 2 of the Voting Rights Act of 1965.**

First, as a preliminary matter, Plaintiffs would like to clarify that they do not seek injunctive relief under Section 2 of the Voting Rights Act. Defendant Cox devotes substantial space in her response brief arguing that Plaintiffs will be unable to show a likelihood of success on the merits of their Voting Rights Act claim. However, Plaintiffs clearly state in their memorandum that they are only seeking a temporary restraining order on their *Anderson-Burdick* claim. ECF No. 5, at 10 (Pls. Mem. in Supp. of Mot. for T.R.O). Thus, Plaintiffs have not

1

moved for a TRO on their Section 2 claims and are not seeking review of that issue at this stage of the proceedings.

### B. The Requested Injunctive Relief Would Maintain the Status Quo and Ameliorate Voter Confusion.

The Defendant misguidedly relies on *Purcell v. Gonzalez*, and its derived doctrine, which she notes instructs that court "'orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls.'" ECF No. 18, at 26 (Def.'s Resp. Br.)(quoting *Purcell*, 549 U.S. 1, 4-5 (2006) (per curiam)).  But *Purcell* in no way asks that courts turn a blind eye to unlawful late-hour changes in election processes of *officials' own making*.  It is, of course, the Defendant—not Plaintiffs or the Court—that "would" and here *has* "change[d] election law in close proximity to an election." ECF No. 18, at 27.  Defendant moved Dodge City's longstanding polling place within weeks of a general election to an admittedly inconvenient location.  She then compounded any confusion that abrupt change likely caused by incorrectly informing hundreds of newly-registered voters that they could vote at the original voting location.  *Id.* at 8.  If it is voter confusion that concerns Defendant, her ship has sailed.  Defendant already provoked the same confusion the *Purcell* principle seeks to prevent.

The relief Plaintiffs seek would only restore decades-old status quo, not disrupt it. Indeed, if anything, *Purcell* supports the requested relief, as it would *cure* the voter confusion that Defendant has created.  Making the Civic Center (or other centrally-located polling place) available to voters, will only make it more likely that residents who have voted at the same location for two decades are able to vote again.  It will also diminish confusion among voters and any "consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5.  Both, because it makes it less likely that the incorrect information Defendant gave large numbers of voters keeps them from the polls on Election Day—or prevents them from casting a ballot

because they are sent to a location that does not presently serve as a polling location—and because it ensures voters with transportation concerns are able to vote in person.

In any event, Defendant misapplies *Purcell*'s teaching, elevating essentially any burden on election officials over voters' weighty right to cast a ballot. Defendant takes great pains to list steps it claims County officials will have to take to make a more centrally-located polling place available to voters. But even taking Defendant at her word, the *Purcell* doctrine would not foreclose the relief Plaintiffs seek. Rather, even in *Purcell*, the Supreme Court cautioned that "considerations specific to election cases," should be a factor "*in addition to* the harms attendant upon issuance or nonissuance" of the relief sought. *Purcell*, 549 U.S. at 4 (emphasis added). The harms attendant to nonissuance of a TRO here are clear. *See* ECF No. 5, at 10-14. As previously noted, hundreds of voters are at risk of disenfranchisement due to Defendant's misleading instructions and thousands will be unable to leave the city in order to travel to the new polling location.

Finally, contrary to what Defendant suggests, *Purcell* is not a talisman for administrators to foreclose all review of their conduct in proximity of an election. Rulings of other federal courts in voting rights cases make plain that *Purcell* does not preclude the Court from granting relief to remedy unlawful burdens on the right to vote. *See, e.g.*, *Fla. Democratic Party v. Detzner*, No. 16-cv-607, 2016 WL 6090943 (N.D. Fla. Oct. 16, 2016) (entering injunction 22 days before 2016 general election to permit voters opportunity to cure signature mismatch on absentee ballots); *Ohio APRI v. Husted*, No. 16-cv-303, 2016 WL 6093371 (S.D. Ohio Oct. 19, 2016) (entering injunction 20 days before election requiring counting of validly cast provision ballots by certain voters); *Action NC v. Strach*, 216 F. Supp. 3d 597 (M.D.N.C. 2016) (entering injunction 5 days before election requiring counting of certain validly cast provisional ballots);

*U.S. Stud. Ass'n Found. v. Land*, 585 F. Supp. 2d 925 (E.D. Mich. Oct. 13, 2008) (entering injunction 22 days before election requiring acceptance of certain submitted voter registration forms); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404 (E.D. Mich. 2004) (entering injunction 16 days before election requiring counting of out-of-precinct ballots).

### C. In Person Election Day Voting Has Significant Advantages Over Other Methods of Voting and is Not Simply A Matter of Preference for Many Residents of Dodge City.

Defendant Cox dismisses Plaintiff Rangel-Lopez's asserted right to cast his ballot in person as a mere preference and one of "life vagaries." ECF No. 18, at 16-17. However, courts have validated Plaintiff's argument that restricting the right to vote to advance or absentee voting options deprives voters of material benefits available during in-person Election Day voting. Advance absentee mail voters lack poll worker assistance and must complete additional procedural requirements in order to obtain and cast their ballots. *See, e.g.*, *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004) (noting that in-person voters on Election Day are less likely to cast invalid ballots because they, "being present at the polling place, may be able to get assistance" by elections workers); *Walgren v. Howes*, 482 F.2d 95, 100-102 (1st Cir. 1973) (implicitly recognizing that absentee voting has inherent burdens, additional procedural requirements, and disadvantages). While Defendant dismisses Plaintiff Rangel-Lopez's concern that his vote will not count as "so absurd it does not merit a response," Plaintiff's concerns are well founded. As recently as the August primary election, hundreds of advance mail voters were disenfranchised through counties' unconstitutional practice of rejecting ballots for perceived mismatched signatures.[1] Moreover, unlike in-person voters in Kansas, advance ballot voters do

---

[1] Brian Lowry, *Colyer's lawyers tell Johnson County to count the 153 discarded ballots in tight governor race*, KANSAS CITY STAR, Aug. 14, 2018, https://www.kansascity.com/news/politics-government/election/article216675985.html

not receive notice that their ballot was rejected or converted to provisional status. Thus, they lack the same opportunities to challenge or cure problems before the canvass as in-person voters.

Even advance, in-person voting would deny Plaintiff Rangel-Lopez advantages available to those who vote in-person on Election Day. In particular, voters limited to advance voting options are "deprived" of information that may affect their vote "that surfaces in the late stages of the election campaign." *Griffin*, 385 F.3d at 1131. Because Rangel-Lopez is a first-time voter, he wants to avail himself of the assistance of poll workers and make a fully informed decision on each candidate and question being decided during this election. Defendant Cox cannot simply relegate all of the voters for whom she has made Election Day in-person voting impossible to more burdensome, alternative methods of voting. This separate and unequal policy does nothing to reverse the disparate impact marginalized voters will experience because of Defendant Cox's unconstitutional decision to close Dodge City's only polling location.

### D. Defendant Overstates the Litany of Administrative Burdens the County Would Encounter to Keep the Civic Center Polling Location Open.

Defendant has gone to great lengths to identify a laundry list of burdens that would make it impossible for her to keep the Civic Center open as a polling location. ECF No. 18, at 28-29. This professed impossibility is consistent with Defendant's dogged refusal over the past several weeks to engage with Plaintiffs' counsel to improve polling conditions prior to the initiation of this lawsuit. *See* ECF No. 5-13. Plaintiffs expect to further develop these issues during the Court's hearing on November 1, 2018, but provide the following information to demonstrate that the potential burdens on Defendant, should the Court grant Plaintiffs' motion, would be minimal.

First, the Civic Center is vacant for the entirety of Election Day on November 6, 2018,[2] and is an ADA-compliant space that has been used by Defendant to host elections in Dodge City for the past two decades.[3] No construction is set to begin before the election. Any suggestion that Defendant would need to undertake an arduous search for a suitable new polling location or engage in a lengthy ADA compliance review is baseless under the circumstances. Furthermore, Dr. Fred Dierksen, Superintendent at Dodge City Public Schools, remains committed to working with Ford County to provide additional suitable polling locations. ECF No.5, at 8 & n.32.

Second, despite Defendant's claim that it would be challenging to obtain a sufficient number of poll workers to operate two polling locations, Dodge City's mayor has pledged to have City employees trained as poll workers this week to serve under Defendant during this election to the extent there are not enough qualified volunteers. ECF No. 18-1, at 18. The poll workers the City will provide will be bilingual. This should allay any apparent concern Defendant has about complying with Section 203 of the Voting Rights Act, and the influx of trained poll workers should dismiss any concern about compliance with K.S.A. 25-2908(c).

Third, Defendant would not need to engage in any major reprogramming of Kansas's voter registration database or electronic poll books.  Every year, Defendant runs elections for twenty-one different voting precincts at the one polling location for Dodge City.[4]  Despite this, there seems to be no issue with ensuring that voter precincts are properly identified in Kansas's voter database, and that the electronic poll books contain the correct precinct information for

---

[2] This information was confirmed as recently as this morning, October 31, 2018, in a call between Johnny Dunlap and Karen Carmona, who is the secretary for USD 443's Business and Finance Department and the person who keeps the calendar for the Civic Center.

[3] In fact, the USD 443 Civic Center is one of the buildings Dodge City had to bring into compliance with the ADA as part of a settlement with the U.S. Department of Justice in 2001. *See* ECF No. 5, at 7 n.30

[4] Ford County maintains this information on its website: http://www.fordcounty.net/DocumentCenter/View/14923/Polling-Places (last visited Oct. 31, 2018).

each voter. Having two locations for voting would merely require that both locations contain the same electronic records to check against and ensure voters receive the correct ballot.[5]

Fourth, Defendant complains about ordering new paper ballots. Plaintiffs note that Defendant is required under state law to retain a supply of additional printed ballots in the event of an emergency need for more ballots. K.S.A. 25-604(c). This is one such emergency situation for which Defendant should already be prepared. To the extent Defendant does not have a sufficient number of ballots printed, it should not be difficult to print more.

Finally, Defendant maintains that because she has not given voters 30 days' notice, she cannot add another polling location at this time. Kansas law, however, clearly provides for a waiver of the notice requirement in case of emergency. K.S.A. 25-2701(d)(1). At any rate as discussed above, Plaintiffs seek to re-open the Civic Center as the second polling location precisely because conflicting notices will cause voters to show up at both the Civic Center and the Expo Center on Election Day regardless of any further action by the parties. This is indeed the type of emergency contemplated by the statute.

In sum, Defendant cannot fall back on these excuses to justify denying Plaintiffs emergency injunctive relief.

### E. Defendant Cox Is Not an Authority on the Burdens Hispanic and Low-Income Voters Face.

Defendant Cox's tone-deaf brief dismisses Plaintiffs' detailed accounts of the burdens they will face because of her decision to close Dodge City's only polling location. Instead, she baldly asserts on behalf of Dodge City's marginalized voters that the barriers she has erected are

---

[5] In the event that Ford County's electronic polling books are network active, they would also be able to identify anyone who might have already checked in at another polling location. *See Status of Election Security in Kansas*, KANSAS LEGISLATIVE RESEARCH DEPARTMENT (2018), at 2, available at http://www.kslegresearch.org/KLRD-web/Publications/StateLocalGovt/2018-08-08-ElectionSecurityKansas.pdf. Even if not, presumably immediate comparison could be made between the electronic polling books at each polling place after the election.

surmountable.  Without a hint of irony, Defendant Cox calls Hispanic Plaintiffs' and declarants' descriptions of the constitutionally significant challenges they will face voting "patronizing" and "insulting."  Defendant Cox is not a member of the Hispanic community nor is she a low-income worker in Dodge City.  Plaintiffs represent both groups. It is extremely entitled and deeply problematic for Defendant Cox to imply she is better suited to speak on behalf of either group than the state's oldest Latino civil rights organization and actual members of the Hispanic community.  Voters would not be in this situation if Defendant Cox was receptive to the concerns of her constituents rather than substituting her own experiences for those of the community she was elected to serve.

For all these reasons, and the reasons set forth in Plaintiffs' initial memorandum of law, Plaintiffs' motion for a temporary restraining order should be granted.

Respectfully Submitted,

/s/ Lauren Bonds
**Lauren Bonds, KS Sup. Ct. No. 27807**
**Zal Kotval Shroff KS Sup. Ct. No. 28013**
**ACLU FOUNDATION OF KANSAS**
6701 W. 64th St., Suite 210
Overland Park, KS 66202
Phone: (913) 490-4110
Fax: (913) 490-4119
lbonds@aclukansas.org
zshroff@aclukansas.org

**Sophia Lin Lakin*** 
**Adriel I. Cepeda Derieux***
**Dale E. Ho***
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC.**
New York, NY 10004
(212) 549-7836
slakin@aclu.org
acepedaderieux@aclu.org
dale.ho@aclu.org
***application for pro hac vice forthcoming**
ATTORNEYS FOR THE PLAINTIFFS

**Mark P. Johnson KS 22289**
**DENTONS US LLP**
4520 Main Street, Suite 1100
Kansas City, Missouri 64111-7700
816-460-2400
FAX 816-531-7545
mark.johnson@dentons.com

## CERTIFICATE OF SERVICE

I certify that on October 31, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notifications of such filing to the e-mail addresses of all counsel of record.

/s/ Lauren Bonds

Date: October 31, 2018