# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALEJANDRO RANGEL-LOPEZ AND LEAGUE OF UNITED LATIN AMERICAN CITIZENS, KANSAS,**<br><br>          **Plaintiffs,**<br><br>v.<br><br>**DEBORAH COX, FORD COUNTY CLERK, in her official capacity,**<br><br>          **Defendant.** | **Case No. 18-2572-DDC-TJJ** |

## MEMORANDUM AND ORDER DENYING MOTION FOR
## TEMPORARY RESTRAINING ORDER

Plaintiffs Alejandro Rangel-Lopez and League of United Latin American Citizens, Kansas, filed this lawsuit against Deborah Cox, Ford County Clerk, asserting that Ms. Cox's decision to move Dodge City, Kansas's only polling location from the Civic Center to the Western Bank Expo Center (located about one mile outside the city limits) imposes a substantial burden on all voters and thus violates their rights under the First and Fourteenth Amendments.[1] When filing their Complaint, plaintiffs also filed a Motion for Temporary Restraining Order. Doc. 4. Plaintiffs' motion seeks a temporary restraining order mandating defendant to: (1) reopen the polling location at the Civic Center in Dodge City, Kansas, or in a building within the city limits; and (2) notify all registered voters via mail that they can vote either at the Expo Center or the new location. *Id.* at 3. At the motion hearing on November 1, 2018, plaintiffs refined their request, explaining that it asks the court *either* to enjoin defendant to: (1) open two

---

[1] Also, plaintiffs assert that defendant's actions violate Section 2 of the Voting Rights Act. Plaintiffs' Voting Rights Act claim is not at issue in the current motion pending before the court. *See* Doc. 20 at 1 (asserting that plaintiffs do not seek injunctive relief under Section 2 of the Voting Rights Act).

polling locations on Election Day—one at the Civic Center and another one at the Expo Center; *or* (2) move all voting to a single polling location at the Civic Center.  For reasons explained below, the court denies plaintiffs' motion.

### I. Factual Background

For the last 20 years, the Civic Center has served as the only polling location in Dodge City, Kansas.  On September 11, 2018, Ford County Clerk Deborah Cox—the County's chief election officer—unilaterally decided to move the polling location after learning that the city was planning construction in the vicinity of the Civic Center.  Ms. Cox determined that the Western Bank Expo Center ("Expo Center") was the best available location for a temporary polling site because it is owned by Ford County, meets the requirements of the Americans with Disabilities Act, and is large enough to accommodate the heavy voting traffic expected on Election Day. The Expo Center is located about a half mile outside Dodge City's city limits.  It's about 3.7 miles from the Civic Center and about 1.2 miles from the nearest stop on public transportation.

On September 28, 2018, Ms. Cox mailed notices to registered voters advising them of the polling location change from the Civic Center to the Expo Center.  Her notice conceded that the Expo Center is "not a convenient location" but it "is one that will meet the ADA requirements and is large enough to hold an election of this size."  Def.'s Ex. 5.  Also, the notice provided registered voters with information about their other options to vote, *i.e.*, by advance voting or mail-in ballot.

After Ms. Cox mailed this notice, she learned that some voters were confused about the correct polling location based on the Notice of Disposition/Certificate of Registration that some 294 newly registered voters had received.  That Notice identified the "regular" polling place for these voters as the Civic Center.  *See* Pls.' Ex. 6.  But it did not provide information explaining

that the County had moved the polling location temporarily to the Expo Center for the November 6, 2018, election. Ms. Cox explained that once she realized this error, she mailed correspondence to these 294 voters notifying them of the temporary relocation of their polling location to the Expo Center. She also posted a notice about the relocation on Ford County's official website. Def.'s Ex. 11.

Plaintiffs assert that defendant's decision to move the polling location from the Civic Center to the Expo Center—a single polling center located outside of town—imposes a substantial burden on all voters in Dodge City because the location is inconvenient and the temporary location change has caused voter confusion. And specifically, plaintiffs contend that moving the polling location to the Civic Center will have a disproportionate impact on Hispanic[2] voters because: (1) they are less likely to be able to use transportation to get to the new polling location; and (2) they lack flexible work schedules to accommodate travel to the Expo Center location.

At the hearing, Ms. Cox testified that the City of Dodge City is providing free public transportation to voters. She identified various notices and press releases—printed in both English and Spanish—that the City has published in local newspapers and on its website. They provide information about free door-to-door transportation to and from the Expo Center polling location on Election Day along with a number to call to schedule a ride. Def.'s Exs. 6, 8, 9. And, as recently as October 29, 2018, the City issued a press release—in both English and Spanish—announcing, among other things, that the City was offering free rides from a voter's home to the polls on Election Day. Def.'s Ex. 10. The notice also explained that free rides were available to citizens who wished to participate in advance voting.

---

[2] This is the way that plaintiffs refer to this ethic group. *See* Doc. 7 at 1–2 (First Am. Comp. ¶ 1).

3

Five days after Ms. Cox announced the decision to move the polling location to the Expo Center, the American Civil Liberties Union of Kansas ("ACLU") sent a letter to Ms. Cox dated October 3, 2018.  Pls.' Ex. 7.  The letter thanked Ms. Cox for agreeing to speak with the ACLU on October 5, and it identified some concerns raised by Ford County constituents about the County's current polling practices.  *Id.*  Ms. Cox later cancelled the October 5 phone call because, she testified, she was pulled into another meeting and didn't have time to reschedule the call.  On October 16, 2018, the ACLU sent another letter to Ms. Cox expressing that it was "troubled by [her] decision to cancel [their] telephone call scheduled for October 5, 2018 and [her] subsequent unwillingness to set up another time to speak to [the ACLU]."  Pls.' Ex. 8.

On October 19, 2018, the ACLU sent another letter to Ms. Cox.  Def.'s Ex. 12 at 2–3. This letter advised that the ACLU and the Kansas Coalition for Citizen Participation would provide assistance to voters through a non-partisan, election protection program for the 2018 general election.  *Id.*  The letter encouraged Ms. Cox to refer voters to the program's hotline if they need voter assistance.  *Id.*  Also, the letter expressed the ACLU's hope that it could contact Ms. Cox or a member of her staff on Election Day if they had questions or reports to share with her office.  *Id.*

On Monday, October 22, 2018, Ms. Cox emailed the ACLU's letter to Bryan Caskey, the State Director of Elections, who works in the Kansas Secretary of State's Office.[3]  The text of Ms. Cox's email recites:  "This is what I got today in the mail from the ACLU.  LOL."  *Id.* at 1. Ms. Cox testified that "LOL" means laugh out loud.  Also, she explained that she had experienced problems with the ACLU's volunteer program at the primary elections in August 2018.  According to Ms. Cox, she observed the volunteers talking to provisional voters as they

---

[3]  Kansas's Secretary of State currently is Kris Kobach.  Mr. Kobach is the Republican nominee for Kansas governor in the 2018 general election.

4

left the polling place. When she told the ACLU's volunteers to stop interacting with voters, they refused and—according to Ms. Cox—became combative. Thus, Ms. Cox explained, her "LOL" in her email to Mr. Caskey referred to her earlier challenges with the ACLU's volunteer program.

On cross-examination, Ms. Cox denied the proposition that she hadn't taken the ACLU's request seriously. But she appeared to read that letter as one asking her to post information on Ford County's website. The letter never makes such a request. And, Ms. Cox testified, she couldn't allow the ACLU to post information on the County's website because then the County would have to allow other groups to do the same. Ms. Cox conceded that she never explained her position to the ACLU. And she admits she hasn't responded to the ACLU's October 19 letter.

At the hearing's conclusion, the court asked Ms. Cox whether, on Election Day, she planned to place signage at the Civic Center to notify voters that the Civic Center is not an open polling location for the November 6 election. Ms. Cox represented to the court that she intends to post signage at the Civic Center that will notify any voters who appear there—mistakenly believing that the Civic Center is their assigned polling location—that the temporary polling location is located at the Expo Center.

Ms. Cox's counsel also argued that Ms. Cox plans to have transportation available at the Civic Center on Election Day to take voters from the Civic Center to the open polling location at the Expo Center. But when the court pressed Ms. Cox for more information about this transportation effort, she conceded that she had called the City just that morning to ask about making transportation available for voters who mistakenly come to the Civic Center and need transportation to the Expo Center. The City, Ms. Cox also reported, said that it would try to

5

assist with Ms. Cox's transportation request but that it only has a limited number of buses to provide on Election Day.

## II. Legal Standard

Federal Rule of Civil Procedure 65(b)(1) authorizes the court to issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). When addressing a motion for temporary restraining order, the court applies the same standard as it applies to a motion for preliminary injunction. *Sac & Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 907 (D. Kan. 1995). This standard requires the moving parties to establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The issuance of a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court." *Sac & Fox Nation*, 905 F. Supp. at 906.

## III. Discussion

The court denies plaintiffs' Motion for Temporary Restraining Order because plaintiffs have failed to establish at least two of the four elements required to secure the extraordinary relief they seek.

*First*, the court finds that it is not at this late date, just days before the election, in the public interest to enter a temporary restraining order requiring the Ford County Clerk to make

changes to the polling location.  Plaintiffs filed their lawsuit and Motion for Temporary Restraining Order on Friday, October 26, 2018.  They served defendant the following Monday, October 29.  Also, on Monday, October 29, plaintiffs asked the court for a hearing on their motion.  The court held a hearing on the Motion for Temporary Restraining Order on Thursday, November 1—just five days from the election scheduled for Tuesday, November 6.

Defendant argues that it is impossible for the County to open another polling location before next Tuesday.  She provides several reasons, including that Kansas state law requires voters to be assigned to just one polling location.  So, to open two polling locations in Dodge City, defendant would need to reprogram the voter registration database to assign voters to a new location and then notify all voters of those newly-assigned locations.  Mr. Caskey testified he would not advise making such a change at this time because it would add to voter confusion.

Indeed, our Supreme Court has cautioned:  "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls."  *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).  And importantly, "[a]s an election draws closer, that risk will increase."  *Id.* at 5.  Here, with the election just days away, the court declines to rearrange polling locations in Dodge City because such an order is not in the public's interest.

Plaintiffs urge the court not to apply *Purcell* to the facts here.  Plaintiffs argue that *Purcell* involved a challenge to a state statute, while plaintiffs here challenge the actions of a single county election official—*i.e.*, Ms. Cox.  And, plaintiffs contend, Ms. Cox's actions have created the voter confusion.  So, they argue, the court can cure that confusion and restore the status quo by ordering the Civic Center to reopen as a polling location—the site of Dodge City's only polling location for the last 20 years.  But this argument ignores everything that has

7

transpired since Ms. Cox first announced that she was moving the polling location to the Expo Center.  Since September 28, 2018, Ms. Cox has notified voters of that change by letter and through the media—advertising the change in newspapers, on the radio, and on the Ford County website.  Also, the City has publicized the change through various press releases.  For the court to insert itself into this process on the eve of the election—by ordering the reopening of the Civic Center either as the only polling location or a second polling location—likely would create more voter confusion than it might cure.  The relief plaintiffs seek is not in the public's interest.

Also, the court is unwilling to grant emergency relief on the theory that a second polling location is needed to ease crowding at the polls.  For the last 20 years, Dodge City has offered only one polling location—at the Civic Center—for its 13,000 registered voters.  On the November 6 election, Dodge City again will provide just one polling location for its registered voters—at the temporary location at the Expo Center.  The court heard testimony about how voters in Dodge City have experienced long lines at the polls during certain hours of the day—for example, at the end of the day when many voters get off work.  The court understands that another polling location might mitigate those concerns and shorten wait times for Dodge City voters at the polls.  But, to the extent plaintiffs base their request for relief on the burdens that a single polling location imposes on voters in Dodge City, they have had 20 years to present that claim.

*Second*, the court does not decide whether plaintiffs ultimately will succeed on the merits of their constitutional claims under the First and Fourteenth Amendment.  The court recognizes that plaintiffs may develop evidence that could support a finding that Ms. Cox has placed a substantial burden on voters by moving Dodge City's single polling site to a location she described as "not a convenient" one, and by sending information to newly registered voters

8

listing their polling location as the Civic Center but providing no information about the temporary move to the Expo Center. *See Utah Republican Party v. Cox*, 892 F.3d 1066, 1077 (10th Cir. 2018) (explaining that under the Supreme Court's *Anderson-Burdick* balancing test, "'a court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against the "precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights"'" (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983))))). But, the court cannot conclude from the limited record presented here that they are, as the governing legal standard requires, likely to do so. *Winter*, 555 U.S. at 20.

The court is troubled by Ms. Cox's reaction to the ACLU's October 19 letter—one that offered to provide voter assistance in Ford County. Ms. Cox conceded she never responded to that letter. Instead, she forwarded the letter to the Secretary of State's office with her "laugh of loud" comment. Ms. Cox tried to explain her response merely as venting her frustration from earlier interactions with the ACLU's volunteers during the August primary election. But her testimony about the request made by the ACLU's letter makes it appear that she didn't read its contents. As Justice White explained in *Burdick v. Takushi*: "It is beyond cavil that voting is of the most fundamental significance under our constitutional structure." 504 U.S. at 433 (citation and internal quotation marks omitted). Justice White also explained that "[i]t does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id.* (citation omitted). This is why the Supreme Court has directed courts to apply the *Anderson-Burdick* balancing test to challenges to election

regulations.  *Id.* at 434.  And while the court must evaluate the fully-developed facts governing this claim on a later day, the court notes, for now, its concerns about Ms. Cox's "LOL" comment and questions whether it manifests a disregard for the "fundamental significance" that our Constitution places on the right to vote.  *Id.* at 433.

For the reasons recited, the court concludes that plaintiffs have not shown that they are likely to prevail.  And likewise, they have not shown it is in the public interest to grant plaintiffs the relief that they seek in their Motion for Temporary Restraining Order.  Under the existing case law developed years ago by our Supreme Court, the court cannot order defendant to open another polling location on the eve of the election—just five days away.  The court thus denies plaintiffs' motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the plaintiffs' Motion for Temporary Restraining Order (Doc. 4) is denied.

**IT IS SO ORDERED.**

**Dated this 1st day of November 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**