# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LEAGUE OF UNITED LATIN AMERICAN )
CITIZENS, KANSAS; and ALEJANDRO )
RANGEL-LOPEZ, )
                                   Plaintiffs, )
)
vs. )   Case No. 2:18-cv-02572-DDC-TJJ
)
DEBORAH COX, Ford County Clerk, in her )
official capacity, )
                                   Defendant. )

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO STAY (i) PLANNING/SCHEDULING
CONFERENCES AND (ii) ISSUANCE OF AN INITIAL SCHEDULING ORDER**

Defendant Deborah Cox, in her official capacity as the duly elected Clerk of Ford County, Kansas, respectfully submits the following Reply to Plaintiffs' Response to Defendant's Motion to Stay (i) Planning/Scheduling Conferences and (ii) Issuance of Initial Scheduling Order under Fed. R. Civ. P. 16(b) and 26(f) until the Court has issued a ruling on Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint.

## I. – Introduction

On November 16, 2018, Defendant filed a motion to dismiss this lawsuit pursuant to Fed. R. Civ. P 12(b)(1) and 12(b)(6). As of January 2, 2019, that motion is fully briefed and is awaiting decision by Judge Crabtree. Neither party requested, nor is in present need of, any discovery to brief the arguments in support of their respective positions on that motion.

Meanwhile, the arguments Defendant advanced in her motion to dismiss are, at a minimum, highly compelling as to both the non-justiciability and lack of substantive merit of Plaintiffs' claims. The passage of the November 2018 general election, the establishment of two new polling places for all future elections in Dodge City, and the

public announcement that Defendant will no longer use the Western State Bank Expo Center as a polling site for Dodge City voters renders this case completely moot. In fact, Defendant formally announced today the specific locations of the new polling places – the Hoover Pavilion and the Knights of Columbus Hall.[1]

Moreover, on the "merits," Plaintiffs' causes of action are built solely on highly generalized statistics and patronizing stereotypes that come nowhere close to stating a claim upon which relief may be granted. If Judge Crabtree accepts either Defendant's 12(b)(1) jurisdictional argument or its 12(b)(6) substantive defense, this case will be fully resolved. Requiring the parties to participate in a Rule 26 planning conference and begin initial discovery would thus be both wasteful and unduly burdensome.

## II. – Plaintiffs' *Ex Parte* Communication with the Court

Before turning to the substance of Plaintiffs' opposition to Defendant's motion to stay all discovery, a word about their *ex parte* communication with the Court. Plaintiffs insist that they acted entirely properly because their call simply inquired about whether and when an initial scheduling order would be issued. Resp. at 1-2. Of course, Defendant has no way of knowing for certain what was discussed in that call because it was *ex parte*. But Plaintiffs seek to distract the Court's attention by omitting the fact that they engaged in this *ex parte* contact only after Defendant (i) had expressed her strong disagreement on the necessity of the very thing Plaintiffs were asking the Court to do and (ii) specifically invited Plaintiffs' counsel to *jointly* contact the Court, via email, with Defendant's counsel so that each side could present their respective positions. Instead, Plaintiffs sought to sandbag Defendant.

While *ex parte* communications may be permitted when they concern little more than routine scheduling or administrative matters, they are emphatically improper

---

[1] *See* http://www.fordcounty.net/227/Election-Office.

when they are part of an "effort[] to influence or learn the judge's mind." *Kaufman v. Am. Family Mut. Ins. Co.*, No. CIVA05CV02311-WDMMEH, 2008 WL 4980360, at *3 (D. Colo. Nov. 19, 2008), *aff'd*, 601 F.3d 1088 (10th Cir. 2010).  Unilaterally nudging (or at least attempting to nudge) the Court to issue an order on a hotly disputed matter, mere hours after opposing counsel recommended in good faith a *joint email/presentation* to the Court, is clearly not a proper tactic.  We have no doubt that the Court's law clerk was wholly unaware that the issue Plaintiffs' attorney was calling about in his/her *ex parte* communication involved a matter over which the parties were in substantial disagreement and ongoing discussions.  But even the American Bar Association's Code of Judicial Conduct imposes limitations on the kind of communications that Plaintiffs apparently deem valid.  That rule dictates:

> When circumstances require it, *ex parte* communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided: (a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication; and (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.  (ABA Code of Judicial Conduct, Rule 2.9(A)(1)).

Defendant is concerned at Plaintiffs' effort to gain an unfair tactical advantage by engaging in this *ex parte* communication.  Plaintiffs are acutely aware that the issuance of the initial scheduling order will set the wheels of costly discovery into motion. Despite what Defendant considers to be the obvious mootness of this case (not to mention its lack of merit), Plaintiffs have undertaken a full-throttled media campaign to slander Defendant and her counsel, misrepresent the actual facts regarding election preparation and polling site selection in Dodge City, and publicly pressure Defendant into abandoning her defense.  *See* Exs. 1-3.  Blindsiding Defendant with an improper *ex parte* communication with the Court is just the Plaintiffs' latest tactic and it should not

be tolerated.

### III. – Compelling Reasons Justify Staying Discovery

Plaintiffs argue in their response that there is nothing unique about a fully briefed motion to dismiss that would justify staying discovery or forcing a defendant to incur expenses in connection with the same. Resp. at 8-9. But Plaintiffs gloss over the fact that, as Defendant demonstrated unequivocally in her motion to dismiss pleadings (Docs. 26, 30), the Court has no jurisdiction even to consider Plaintiffs' claims at this point. There is, accordingly, simply no legitimate reason for discovery to go forward.

Plaintiffs correctly observe (Resp. at 9, n.7) that a stay of discovery is particularly warranted when a defendant asserts an immunity-grounded defense. But the same is true of threshold jurisdictional defenses such as the mootness argument Defendant has raised in the case at bar. In such circumstances, discovery has no potential to advance the lawsuit inasmuch as this defense – if valid, as Defendant's certainly is – would end the action altogether.

*A. – Legal Standard*

Plaintiffs accurately recount the standard typically invoked by courts evaluating the propriety of a request to stay discovery pending resolution of a motion to dismiss. Resp. at 4. The focus is on whether: (1) the case is likely to be finally concluded via the dispositive motion; (2) the facts sought through discovery will affect the resolution of the dispositive motion; and (3) discovery on all issues posed by the complaint would be wasteful and burdensome. *Berry v. Ulrich Hereford Ranch, Inc.*, No. 17-2109-JTM-GEB, 2017 WL 2501071, at *3 (D. Kan. June 9, 2017). The presence of any one of these factors can justify the stay. *Kickapoo Tribe of Indians v. Nemaha Brown Watershed Joint Dist. No. 7*, No. 06-CV-2248-CM-DJW, 2013 WL 3821201, at *1 (D. Kan. July 23, 2013). This analysis

4

requires the court to "'take a preliminary peek' at any pending dispositive motions to see if the motions appear to be meritorious and 'truly case dispositive.'" *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla.), *aff'd*, 87 F. App'x 713 (11th Cir. 2003) (citing cases); *see also Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002).

### B. – *Defendant's Motion to Dismiss will completely resolve the case*

Plaintiffs do not dispute the fact that, if granted, Defendant's motion to dismiss will completely dispose of this case. Instead, Plaintiffs insist their claims are not moot by suggesting that Defendant's announcement of her plans to open two new polling locations for the 2019 election cannot be trusted. This is absurd. Even before Plaintiffs filed their response to Defendant's motion to stay at issue here, Defendant had issued a public notice on the Ford County website, stating that at least two polling places would be operated for Dodge City voters in all future elections:

> In light of recent media attention regarding future polling place locations in Dodge City, I am taking this opportunity to reiterate once again my plans for future polling place locations in Dodge City. Beginning with the 2019 elections, we will be maintaining at least two polling sites for all elections (i.e., both national and local elections). These Election Day locations, of course, will be in addition to the alternative voting options that voters have (i.e., in-person early voting and mail-in ballots). I already have been in contact with the owners/operators of the voting sites and am in the process of working out logistics. I also have arranged with Dodge City Transit to ensure that there will be (i) bus stops – even if temporary – on Election Day in front of the polling place locations, and (ii) as usual, free door-to-door bus service to the polling places on Election Day.

> There have been concerns expressed about the viability of the Dodge City Civic Center as a polling place in light of the current construction. I am fully aware of the ongoing construction and, although the Dodge City Civic Center will, when available, remain a polling site for Dodge City voters in the future, it is unlikely to be available for the 2019 elections. For that reason, I have been working with two alternative facilities for use as polling places in 2019. Well in advance of any changes to their polling place locations, registered voters will be notified at the last address provided to the Ford County Election Office.  If voters have recently moved, therefore, it is very important that they notify my office promptly.
>
> Incidentally, although the November 2018 election seemed to operate very smoothly and efficiently, particularly in light of the free door-to-door bus service offered to all voters by Dodge City Public Transit, there are no plans to re-use the Western State Bank Expo Center as a polling place in the future.  It is an honor to serve as your County Clerk, and I very much appreciate everyone's support. Thank you.
>
> Debbie Cox
> Ford County Clerk/Election Office

*See* http://www.fordcounty.net/DocumentCenter/View/15141/Notice-of-polling-location.

Although the Ford County Clerk is staffed with only two employees (Defendant herself and an assistant) working on election-related matters, Defendant moved with extraordinary speed, beginning almost immediately after she completed her myriad duties associated with the November 2018 election, to procure additional polling sites for future elections.  Contrary to what some may think, this is no simple process.  The Defendant had to identify potentially viable facilities, contact ownership/management to determine the facilities' availability on Election Days, assess the facilities' accessibility and overall compliance with the Americans with Disabilities Act and related state laws, negotiate contracts, assign voters (i.e., voting precincts) to the new sites, reprogram the voter registration database to reflect the new polling place assignments, print out new voter registration cards (i.e., Notices of Disposition), and mail those cards to voters in

order to alert them of their new polling place.

As noted earlier, Defendant has now completed virtually all of those necessities (all that is left is stuffing envelopes and mailing out the new Notices of Disposition to voters). This week, she publicly announced the location of the two new polling places – the Hoover Pavilion and the Knights of Columbus Hall. In light of these activities, what possible purpose would discovery serve here? None.

Plaintiffs attach significance to the fact that Defendant posted a website notice of her intention to open at least two polling sites for future elections only after Plaintiffs filed their response to Defendant's Motion to Dismiss. Resp. at 3, 6. This was hardly the first notice to Dodge City voters of the plans for new polling places. (Doc. 30 at 3). Even so, the timing of the notice is totally irrelevant. Mootness goes to the core of the Court's jurisdiction and can occur, and be raised, at *any time* in the case. *See Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008) ("If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed.").

Nor is it fair or appropriate to characterize Defendant's public announcements as to polling sites acts of gamesmanship or duplicity. To the contrary, they are powerful evidence of Defendant's expedient efforts to keep Dodge City voters apprised of her plans, which have now crystallized, to provide suitable polling locations for the 2019 election(s). She issued those notices as soon as details were finalized. The suggestion by Plaintiffs, therefore, that Defendant was merely engaged in "an evolving attempt to do the bare minimum to give the appearance that this matter is moot" is – as should

7

now be clear to everyone – preposterous.  In short, Defendant should be praised for her diligence, not scorned for her prudence.

### C. – *Discovery would be irrelevant, wasteful and burdensome as well as delay Defendant's ability to prepare for the 2019 elections*

In their response, Plaintiffs make no effort to suggest that any facts they might gather through discovery will affect the resolution of Defendant's motion to dismiss. Nor do they deny that the costs of engaging in discovery would be wasteful to the extent that Defendant's motion to dismiss is expected to be granted.  Instead, Plaintiffs claim they have a pressing need to engage in discovery based on some unsubstantiated fear that Defendant will announce that all of her public pronouncements regarding the new polling sites for Dodge City voters were an elaborate ruse and she will revert to using the Western State Bank Expo Center for the 2019 local election(s).  Resp. at 9-10. Common sense yields a different outcome:  requiring Defendant to engage in Plaintiffs' fishing expedition will only hinder Defendant's ability to timely prepare for the 2019 election(s), a situation that presumably even Plaintiffs want to avoid.

Moreover, Plaintiffs do not detail how any delay in the pretrial proceedings and discovery would deny them relief in the upcoming 2019 local election(s).  Other than groundless allegations that Defendant may underhandedly abort her plans when the Court is not looking, Plaintiffs have provided no legitimate concerns to support a finding that Dodge City voters will not have two accessible polling locations in time for the 2019 local election(s).  Defendant strongly urges the Court not to indulge Plaintiffs' politically-motivated paranoia.

About all Plaintiffs can muster in terms of supposed prejudice is a reference to a January 2017 *Topeka Capital-Journal* article referring to the number of provisional ballots that certain Kansas counties did not count for one reason or another. Resp. at 10, n.11. Defendant questions the accuracy of the article given that its description of ballots being "trashed" or "thrown out" is highly misleading. Ballots were not actually *discarded in the garbage*; they simply were not counted for various technical reasons. Regardless, this article has no relevance to Defendant's motion to stay. If Plaintiffs are worried that evidence may be destroyed during the pendency of the stay – as absurd as that concern might be – they can take comfort that Defendant is well aware of her duty to preserve all evidence and materials related to the claims in this lawsuit. *See 103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006) (an entity has a legal duty to preserve evidence when it knows, or should know, that litigation is imminent). Defendant is obligated not to destroy relevant evidence or materials related to this case and she can assure the Court that she will strictly adhere to that legal requirement. Plaintiffs' contention that proceeding with discovery is necessary to prevent the destruction of relevant information is thus unfounded.

As a final matter, Plaintiffs audaciously criticize Defendant for spending money on experienced election law counsel to defend against this lawsuit rather than simply rolling over and acceding to demands that are in no way required by the law. Resp. at 7, n.4. It takes no small amount of chutzpah for a national civil rights organization to file a frivolous voting action against the county and then attack that same county for having the temerity to deny the utterly scurrilous race- and class-based allegations and

9

hire attorneys seasoned in handling such claims. Nor should it be lost on anyone that Plaintiffs have their own financial incentive to convince Defendant to simply give up: prevailing-party statutory attorney fees' recovery under 42 U.S.C. § 1988(b) and/or 52 U.S.C. § 10310(e). Putting all that to the side, however, Defendant's legal research has unsurprisingly revealed not a scintilla of case law suggesting, let alone holding, that a defendant's expenditure of legal fees in connection with its unwillingness to capitulate and forego a meritorious defense is a valid basis for finding that discovery will not impose an unnecessary expense.

## IV. – Conclusion

For the foregoing reasons, it is clear that any discovery Plaintiffs might seek will not affect the resolution of Defendant's motion to dismiss and will accomplish nothing other than to impose unnecessary expenses on the parties, including the taxpayers of Ford County. Pending before Judge Crabtree is a dispositive motion predicated on overwhelmingly compelling jurisdictional defenses that leave no doubt this case is non-justiciable. The motion's attack on the plausibility of the pleadings provides even more reason why the case has no merit.[2] Defendant thus respectfully requests that the Court stay (i) any planning/scheduling conferences and (ii) the issuance of an initial

---

[2] Based on a newspaper editorial from Plaintiffs' counsel's former executive director, Plaintiffs (or at least their attorneys) appear to be using Defendant as a mere cudgel in their orchestrated campaign to secure broad voting-related changes that advance their political agenda. *See* Ex. 1. But whatever the merits of those changes, they would require *legislative enactments*; they are not even within the power of individual county clerks like the Defendant to implement. The wide disconnect between Plaintiffs' allegations and the reality of the situation in Dodge City is likely explained as well by the ACLU's effort to use this case as a fundraising device, a point amplified by a letter the ACLU's former executive director in Kansas sent to the Defendant in the midst of this litigation. *See* Ex. 4.

10

scheduling order until Judge Crabtree has issued a ruling on Defendant's motion to dismiss.

                                          Respectfully Submitted,

                                          By: <u>/s/ Bradley J. Schlozman</u>
                                          Bradley J. Schlozman (KS Bar #17621)
                                          Mitchell L. Herren (KS Bar #20507)
                                          HINKLE LAW FIRM LLC
                                          1617 North Waterfront Parkway, Suite 400
                                          Wichita, KS  67206
                                          Tel.: (316) 267-2000
                                          Fax: (316) 630-8466
                                          E-mail: bschlozman@hinklaw.com
                                          E-mail: mherren@hinklaw.com

                                          *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the e-mail addresses on the electronic mail notice list, including counsel for the Plaintiff.

By: /s/ Bradley J. Schlozman